### 13453

McDONALD v. STATE HIGHWAY DEPARTMENT

(164 S. E., 920)

*Messrs. J. P. Lane* and *Gibson & Muller,* for appellants,

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistant Attorneys General* and *G. G. McLaurin,* for respondent.

July 18, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

By consent of the parties, under an order of the trial Judge, the three causes above entitled, were tried together in the Court of Common Pleas for Dillon County, and they were so heard in this Court.

Omitting the usual formal allegations the complaints alleged, in brief, the following:

The state highway, known as U. S. 217, which is paved, passes through the towns of Dillon and Latta. On January 12, 1930, on that highway, between Buck Swamp bridge

and Latta, the three intestates, Mildred, Elizabeth, and Virginia McDonald, all young children, were riding in an automobile, driven by their father, in a northern direction, when suddenly the car began to skid on the road, turned completely around, and collided with another car coming from the north, and in the collision the three little girls were killed; that the intestates in no way brought about the injuries, and did not negligently contribute thereto; that the injuries and resulting deaths of the little girls were caused by reason of defects in the highway, in that the road was improperly, negligently, and carelessly built, constructed, and maintained, for the reason that "the asphalt top dressing on said road was improperly mixed, not having sufficient gravel mixed in with the other ingredients of its composition and otherwise improperly mixed and laid in such a manner that the same is and was soft and slick and extremely dangerous to drive upon in damp weather"; that the actions were brought for the benefit of the half-brothers and half-sisters of the intestates; that claims for damages have been filed with the State Highway Department in accordance with law; and that the damage in each case amounted to the sum of $4,000.00.

The answers of the defendant, State Highway Department, set up a general denial and several other defenses. But, on account of the turn the case took in the lower Court, it seems unnecessary to go into the answers here to any extent.

The result in the lower Court was an order of nonsuit in each case, and from that the plaintiff in the three cases has appealed to this Court.

The motion for the nonsuit was made on several grounds. The trial Judge sustained two of them. We think he was clearly right in granting the nonsuit on the ground there was no sufficient evidence of negligence on the part of the State Highway Department, or evidence of any defect in

the highway, under the law, and, accordingly, we shall consider that particular ground only.

The facts adduced at the trial, from the viewpoint of the plaintiff, fairly stated, as we conceive them, were as follows:

On the 12th day of January, 1930, when the weather was damp and the pavement slippery, Mr. Duncan McLaurin, driving a model "T" Ford automobile, was traveling U. S. Highway 217 on his way to Latta. Following him, going to Dillon, traveling the same highway, and in the same direction, Mr. J. G. McDonald was driving an Essex car, and was accompanied by his wife and three minor children, Mildred, Elizabeth and Virginia. A Buick, driven by one Osteen, was traveling the same highway, going in the opposite direction to that of the cars driven by McLaurin and McDonald. McLaurin was driving around twenty-five miles per hour. Mr. McDonald passed the McLaurin car, and as McLaurin, a witness for the plaintiff testified, he was "running pretty well to go around me (McLaurin)." As Mr. McDonald got his Essex in the main part of the highway in front of McLaurin's Ford, the Essex began "shimmying or skidding a bit each way," and "ran off to the right on the shoulder of the road and went about ten or fifteen feet on the dirt, and he (McDonald) pulled back on the pavement, and as he got back on the other side of the road he hit the other car (the Buick driven by Osteen)." The Essex of McDonald and the Buick of Osteen "slapped" or "jammed together." Neither of the cars turned over, nor were they, as it appears from the record, damaged to any great extent. Yet, strange to say, all five of the occupants of the car, Mr. and Mrs. McDonald and the three little girls, were seriously injured, and all five of them died from the injuries they suffered.

There was testimony on the part of the plaintiff to show that, in the construction of the road, the percentage of asphalt was seven and two-tenths, while another paved highway in the same section of the State, claimed

to have been more properly constructed, contained asphalt not exceeding six per cent. The expert witnesses, who had had charge of the paving of the "better highway," were of the opinion that too much asphalt had been put in the pavement where the accident involved in this case occurred, and they thought the increased amount of asphalt caused the road to be very slick when wet, and therefore dangerous to automobile traffic. But these gentlemen testified to a fact, which is of common knowledge, that all paved highways are slick when wet. Several other accidents had occurred previously at or about the same place, where the one involved in this action occurred, but all the witnesses who testified said they had had no trouble on account of the slippery pavement, for the reason that they had traveled carefully thereon. The testimony showed also a matter of common knowledge, that the sudden putting on of the brakes of an automobile on a wet pavement will cause the vehicle to skid and slide.

The legal principles applicable to counties and municipalities as to the maintaining of roads, ways, and streets apply to the State Highway Department as to state highways. See the recent case of *Fant v. State Highway Department,* 164 S. C., 187, 162 S. E., 262.

"Generally speaking, the duty of municipal and *quasi* municipal corporations in respect to their streets and highways is limited to keeping them reasonably safe for· the use for which they are intended, and for those who travel upon them in the ordinary and accustomed modes." 13 R. C. L., 370.

See, also, *Morris v. Langley Mills,* 121 S. C., 200, 113 S. E., 632, 36 A. L. R., 302; *Fant v State Highway Department, supra.*

In the "Pay-As-You-Go" Act of 1924 (33 Stat., 1193, Section 5926 et seq., Code of 1932), where the Legislature directed the State Highway Department to take over, construct, and maintain certain highways in the State highway

system (and the road involved here is one of those), the building of both hard-surface and soft-surface highways was authorized. In that Act (Section 5930, 1932 Code), it was said that the term "hard-surface," as used in the law, should be construed "to mean concrete or concrete base with asphalt or bituminous surfacing, or asphaltic top surface, or other dependable types in the discretion of the State Highway Commission."

There is nothing in the law that condemns the use of the amount of asphalt alleged and testified to have been used in the building of the highway involved here. Nothing appears in the record before us to show that the State Highway Department, in its discretion, forbade the use of the percentage of asphalt that was alleged and testified to have been used. There is no evidence to show that, had less asphalt been used, the paved road would not have been slick in damp weather.

The rule generally recognized as to the paving of a highway seems to us to be well stated in this language: "No legal duty to pave with a particular material, or in a particular method, is imposed by law; nor is there any legal obligation for uniformity of construction on all the streets or ways; neither do new and unexpected uses, requiring great .changes, impose upon the municipality the duty of at once reconstructing the street or alley to suit the use." 13 R. C. L., 372.

The only case in our reports depended upon by the appellant to sustain the view that the case should not have been nonsuited on the ground under consideration is that of *Gray v. State Highway Department,* 165 S. C., 248, 163 S. E., 793, 794, very recently decided. We did not hold, or intend to hold, as appellant seems to feel that we were at least inclined to do, that the fact that a paved road was wet and slippery was in itself sufficient evidence of a defect in a highway of that character. The injury considered in that case did not result from a wet pavement. The accident came

about because a guard, employed by the State Highway Department, tried to keep travelers from driving at a high rate of speed on a wet paved road. Mr. Justice Stabler, who spoke for our Court, where we sustained a directed verdict in favor of the defendant, did venture the suggestion that, if the State Highway Department "had failed to warn those approaching of the slippery condition of the road ahead, and an accident had resulted, it would have been charged with failure to do its duty in the premises." The language used, in connection with all that was said as to the facts of the case, cannot be construed to mean that this Court intended to say that a pavement made slippery because of dampness was, as a matter of law, a defective highway.

It is well known, for experience and thousands of accidents of a character like that from which this action grew have given proof of it, that it is dangerous to travel fast in an automobile on any highway; more dangerous to travel fast on a wet road; still more dangerous to attempt to pass an automobile traveling in the same direction on a wet highway; and, above all, it is extremely dangerous, often resulting in death, for the driver of an automobile, on a wet highway, to pass another car going in the same direction when a third vehicle is approaching. The Courts cannot shut their eyes to these everyday facts, and must take judicial cognizance of them. If the State Highway Department is to be held negligent, as a matter of law, for the defect claimed to have existed in this case, and is to pay damages on account of such alleged defects, and if our people continue to travel paved highways of the State in a careless manner, the result to the State would be so financially disastrous that the General Assembly would be compelled to either do away with paved highways or to repeal the law permitting actions for damages on account of defects in highways. We find nothing in any of our statutes, or in any decision of our Court, which would justify us in holding that the General Assembly has ever

intended that the State Highway Department be held liable for damages occurring from an accident of the kind here involved. And, in the absence of express legislative direction or a clear statement from this Court to that effect, we cannot extend the principles applicable to the maintenance of highways to the point the appellant asks us to go, even in a case like this, where five estimable people, three of them innocent little girls, met such untimely and violent deaths.

We have not deemed it necessary to consider any exceptions of the appellant, except those touching the granting of the motion for nonsuit.

The order appealed from is affirmed.

MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE COTHRAN concur.

MR. JUSTICE BONHAM concurs in result.